1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORROW BOTROS, an individual,<br><br>                                          Plaintiff,<br><br>           vs.<br><br>WILLIAMS LEA, a corporation, and<br>DOES 1 through 20 inclusive,<br><br>                                          Defendant. | **CASE NO. 09-CV-1764 H (RBB)**<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On June 30, 2009, Morrow Botros ("Plaintiff") filed a complaint against Williams Lea ("Defendant") in San Diego Superior Court. (Doc. No. 1 Ex. A ("Compl.").) Plaintiff's complaint arises out of his employment relationship with Defendant and alleges causes of action for discrimination, harassment, and retaliation under the California Fair Employment and Housing Act ("FEHA") and for wrongful termination in violation of public policy. (Id.) On August 13, 2009, Defendant filed a notice of removal based on diversity jurisdiction. (Doc. No. 1.) On April 23, 2010, Defendant filed a motion for summary judgment. (Doc. No. 16.) On May 17, 2010, Plaintiff filed a response in opposition to Defendant's motion for summary judgment. (Doc. No. 25.) On May 24, 2010, Defendant filed a reply in support of its motion for summary judgment. (Doc. No. 27.) The Court held a hearing on Defendant's motion for

summary judgment on June 1, 2010 at 10:30 a.m. in courtroom 13.  Laura Farris appeared on behalf of Plaintiff and Alex Hernaez appeared on behalf of Defendant.  For the reasons set forth below, the Court denies Defendant's motion for summary judgment.

## BACKGROUND

Defendant is a company that provides outsourcing services to business clients in California and elsewhere.  (Doc. No. 16-3 ("Pineda Decl.") ¶ 3.)  Defendant's employees provide word-processing, photocopying, and related office services to attorneys at a San Diego law office.  (Id.)  Defendant hired Plaintiff as an office services associate in April 2005 when Defendant assumed operations at the San Diego law office.  (Id.; Doc. No. 25-2 ("Botros Decl.") ¶ 1.)  Plaintiff had worked for Defendant's predecessor at the San Diego law office since 2000.  (Botros Decl. ¶ 1.)  In 2005, Plaintiff reported to Marisa Navar ("Navar"), an account manager for Defendant.  (Id. ¶ 2.)  In 2006, Navar was assigned to a different location and Alex Chavarria ("Chavarria") was promoted to her position and became Plaintiff's direct supervisor.  (Id. ¶ 3.)

Plaintiff contends that beginning in 2005 and continuing through July of 2007, Chavarria regularly harassed Plaintiff based on his sexual orientation.  (Id. ¶ 4.)  Plaintiff alleges that Chavarria sent Plaintiff text messages and emails that were sexual in nature and related to Plaintiff's sexual orientation, repeatedly called Plaintiff derogatory names based on his sexual orientation, told Plaintiff that he would look better in women's clothing, and made other offensive comments regarding Plaintiff's sexual orientation.  (Id.)

On July 12, 2007, Plaintiff met with Chavarria regarding Plaintiff's 2007 performance evaluation.  (Id. ¶ 7.)  Plaintiff and Defendant provide different accounts of what occurred at the meeting.  Plaintiff contends that he and Chavarria discussed the evaluation, and that Plaintiff told Chavarria he believed the review was untrue and unfair, and that it was intended to discriminate against him.  (Id.)  Plaintiff refused to sign the evaluation and told Chavarria that he planned to write a rebuttal to his review and talk to human resources about the harassment.  (Id.)  Plaintiff contends that Chavarria told Plaintiff not to complain to human resources and that Chavarria would revise the evaluation.  (Id.)  Defendant, on the other hand,

1    argues that Plaintiff threatened Chavarria at the July 12, 2007 meeting by telling him that he

2    was going to notify human resources that Chavarria was harassing him unless Chavarria made

3    an upward adjustment on the review.  (Doc. No. 16-1 at 11.)

4         On July 13, 2010, Chavarria sent an email to Guadalupe Pineda ("Pineda"), Senior

5    Human Resources Specialist for Defendant, reporting that Plaintiff had blackmailed Chavarria

6    and that Plaintiff had discussed his performance review with an employee of Defendant's law-

7    firm client.  (Pineda Decl. ¶ 5, Ex. D.)  The email also alleged that Plaintiff accessed his

8    performance review prior to the July 12, 2010 meeting by opening a confidential envelope on

9    Chavarria's desk.  (Id.)  Plaintiff disputes that he discussed his performance review with any

10   law-firm employee and contends that he never accessed the performance review prior to his

11   meeting with Chavarria.  (Botros Decl. ¶¶ 18, 19, 30.)  On July 16, 2007, Pineda spoke with

12   Chavarria by phone and Chavarria reiterated his concerns.  (Pineda Decl. ¶ 6.)  On the same

13   day, Chavarria sent Pineda another email complaining about Plaintiff.  (Id. ¶ 7.)  Pineda

14   coordinated a conference call with Chavarria, Plaintiff, and two additional Williams Lea

15   employees.  (Id.)  At the meeting, Defendant's employees made clear to Plaintiff that he was

16   being accused of blackmailing Chavarria and breaching his non-disclosure agreement with

17   Defendant by discussing his performance review with Defendant's client's employees. (Botros

18   Decl. ¶ 21.)

19        On July 17, 2007, Pineda called Plaintiff and told him that she planned to travel to San

20   Diego to meet with Plaintiff.  (Id. ¶ 23.)  During the telephone call, Plaintiff told Pineda that

21   he had received harassing text messages and emails from Chavarria and that Plaintiff would

22   like to speak with Pineda about the harassment.  (Id.; Pineda Decl. ¶ 9.)  On July 18, 2007,

23   Pineda traveled to San Diego and met with Plaintiff.  (Pineda Decl. ¶ 10.)  During the meeting,

24   Plaintiff showed Pineda three text messages that Chavarria allegedly sent to Plaintiff.  (Id. ¶

25   10; Botros Decl. ¶ 24.)  Plaintiff contends he also told Pineda that Chavarria had been sending

26   Plaintiff offensive text and email messages at all hours of the day and night for some time and

27   that Plaintiff felt that the messages were discriminatory.  (Botros Decl. ¶ 24.)  Plaintiff

28   contends that, at the July 18, 2007 meeting, Pineda told Plaintiff that she had to suspend him

1   because the law-firm client did not like the conflict between Plaintiff and Chavarria.  (Id.)

2   Pineda testified that she did not make the decision to suspend Plaintiff before meeting with

3   Plaintiff in San Diego.  (Doc. No. 25-4 ("Pineda Depo.") 92:16-93:7.)

4          After returning to her Los Angeles office on July 18, 2007, Pineda discussed her

5   meeting with Plaintiff with her supervisor, Jean Wetstein ("Wetstein").  (Pineda Decl. ¶ 11.)

6   Pineda contends that she recommended that Defendant terminate Plaintiff's employment for

7   threatening Chavarria and for violating Defendant's non-disclosure agreement.  (Id.) Wetstein

8   agreed with Pineda's recommendation and Wetstein made the decision to terminate Plaintiff.

9   (Id.)  On July 19, 2007, Pineda called Plaintiff and informed Plaintiff that Defendant had

10  decided to terminate Plaintiff's employment.  (Id. ¶ 14.)  Plaintiff contends that, during the call,

11  Pineda told Plaintiff that the law-firm client did not like the conflict between Plaintiff and

12  Chavarria and that Plaintiff was being terminated.  (Botros Decl. ¶ 25.)  On the same day,

13  Plaintiff emailed a letter and faxed materials to Pineda regarding Chavarria's alleged

14  harassment.  (Id.)  The parties dispute whether the email or the phone call occurred earlier.

15  (See Doc. No. 16-1 at 14; Doc. No. 25 at 16 .)

16         Defendant concluded that Chavarria had engaged in inappropriate behavior and

17  terminated Chavarria's employment on July 20, 2007.  (Pineda Decl. ¶ 14; Doc. No. 16-1 at

18  14.)

19         On June 24, 2008, Plaintiff filed a complaint alleging discrimination based on sexual

20  orientation with the California Department of Fair Employment and Housing ("DFEH").  (Doc.

21  No. 16-4 ("Hernaez Decl.") ¶ 3, Ex. M.)  On July 1, 2008, DFEH issued Plaintiff a right-to-sue

22  notice.  (Id.)  On June 30, 2009, Plaintiff filed a civil complaint against Defendant in San

23  Diego Superior Court.  (Compl.)

## DISCUSSION

24

### I.    Motion for Summary Judgment - Legal Standard

25

26         Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil

27  Procedure if the moving party demonstrates the absence of a genuine issue of material fact and

28  entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

1    A fact is material when, under the governing substantive law, it could affect the outcome of

2    the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine

3    if a reasonable jury could return a verdict for the nonmoving party.  Id.

4         A party seeking summary judgment always bears the initial burden of establishing the

5    absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party can

6    satisfy this burden in two ways: (1) by presenting evidence that negates an essential element

7    of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

8    establish an essential element of the nonmoving party's case on which the nonmoving party

9    bears the burden of proof at trial.  See id. at 322-23.  "Disputes over irrelevant or unnecessary

10   facts will not preclude a grant of summary judgment."  T.W. Elec. Serv., Inc. v. Pacific Elec.

11   Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Once the moving party establishes the

12   absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth

13   facts showing that a genuine issue of disputed fact remains.  Matsushita Elec. Indus. Co. v.

14   Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The nonmoving party cannot oppose a

15   properly supported summary judgment motion by "rest[ing] upon mere allegation or denials

16   of his pleading."  Anderson, 477 U.S. at 256.

17        When ruling on a summary judgment motion, the court must view all inferences drawn

18   from the underlying facts in the light most favorable to the nonmoving party.  Matsushita, 475

19   U.S. at 587.  The court does not make credibility determinations with respect to evidence

20   offered.  See T.W. Elec., 809 F.2d at 630-31.  Summary judgment is therefore not appropriate

21   "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts."

22   Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

23  **A.**      **Sexual-Orientation Discrimination**

24        Plaintiff alleges that Defendant discriminated against him and terminated his

25   employment because of his sexual orientation in violation of FEHA, Cal. Gov't Code §

26   12940(a). (Compl. ¶¶ 17-25.) Defendant moves for summary judgment arguing that Plaintiff

27   cannot establish a prima facie case of discrimination because he failed to perform competently

28   and because he was not subjected to disparate treatment.  (Doc. No. 16-1 at 16-18.)

In evaluating discrimination claims under FEHA, California courts look to federal precedent governing analogous federal discrimination laws.  See Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes.  In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment.") (citations omitted).  "[W]hen responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish his or her case. [The plaintiff] may proceed by using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]."  McGinest v. GTE Service Corp., 360 F.3d 1103, 1122 (9th Cir. 2004); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Plaintiff first contends that he has presented direct evidence of discriminatory intent, and accordingly that application of the McDonnell Douglas framework is unnecessary. (Doc. No. 25 at 18.)  To prove discriminatory intent, Plaintiff points to evidence of derogatory comments made by Chavarria concerning Plaintiff's sexual orientation, evidence that Chavarria's allegations regarding Plaintiff's behavior served as the basis's of Plaintiff's termination, and Pineda's statement that Plaintiff was sent home because Defendant's client did not like the conflict between Plaintiff and Chavarria.  (Id. at 18-19.)  With respect to discrimination based on sexual orientation, Plaintiff presents Chavarria's comments, emails, and text messages.  Chavarria, however, did not make the decision to terminate Plaintiff. Plaintiff offers no evidence of discriminatory remarks made by Pineda or Wetstein, who made the decision to terminate Plaintiff's employment.  Therefore, Plaintiff must show a nexus between Chavarria's discriminatory remarks and Pineda or Wetstein's subsequent employment decisions.  See Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2004).  These are highly factual issues of intent for the jury to resolve.

///

Plaintiff also argues that he can make a showing of discrimination sufficient to survive a motion for summary judgment under the McDonnell Douglas framework. (Doc. No. 25 at 19-21.) Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802. To present a prima facie case of discrimination, a plaintiff must provide evidence that (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other employees with qualifications similar to his own were treated more favorably. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998). "The prima facie case, once established, results in a presumption that the defendant unlawfully discriminated against the plaintiff." Lessard v. Applied Risk Mgmt., 307 F.3d 1020, 1025 n.3 (9th Cir. 2002) (quotation marks and citation omitted). If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action being challenged. McDonnell Douglas, 411 U.S. at 802. Assuming the defendant carries this burden, the plaintiff must then demonstrate that the defendant's asserted reason is a pretext for discrimination. Id. at 802, 804; see also Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Defendant contends that Plaintiff has failed to present a prima facie case of discrimination because Plaintiff has not shown that he performed in accordance with Defendant's expectations. (Doc. No. 16-1 at 16-17.) Plaintiff, however, has presented evidence that, prior to his 2007 performance review, which was conducted by Chavarria, he received satisfactory evaluations. (Botros Decl. ¶ 26, Ex. G.) Defendant additionally argues that Plaintiff has failed to show that he was subject to disparate treatment. (Doc. No. 16-1 at 18.) Considering the argument and evidence presented by the parties, the Court concludes that Plaintiff has met his initial burden of presenting a prima facie case. See Godwin, 150 F.3d at 1220.

Because Plaintiff has established a prima facie case of discrimination, the burden shifts to Defendant to rebut the presumption of discrimination by producing evidence that Plaintiff's employment was terminated for a legitimate, non-discriminatory reason. See Burdine, 450

1    U.S. at 254.  "The defendant need not persuade the court that it was actually motivated by the

2    proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as

3    to whether it discriminated against the plaintiff."  Id.  Defendant contends that on July 13,

4    2007, Chavarria reported to Pineda that Plaintiff had blackmailed him and that Plaintiff had

5    breached Defendant's non-disclosure agreement. (Doc. No. 16-1 at 19.)  Defendant contends

6    that employees at Defendant's law-firm client corroborated Chavarria's allegations.  (See id.)

7    Defendant argues that, after investigating the allegations, Defendant terminated Plaintiff's

8    employment because Plaintiff had threatened Chavarria and violated Defendant's non-

9    disclosure agreement, a legitimate, non-discriminatory reason for the termination.

10          Since Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's

11   termination, Plaintiff must persuade the trier of fact that Defendant intentionally discriminated

12   against Plaintiff.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000).

13   "[I]n attempting to satisfy this burden, the plaintiff . . . must be afforded the opportunity to

14   prove by a preponderance of the evidence that the legitimate reasons offered by the defendant

15   were not its true reasons, but were a pretext for discrimination."  Id. at 143 (quotation marks

16   and citations omitted).  Plaintiff contends that Defendant did not terminate his employment

17   because he threatened Chavarria or because he violated his non-disclosure agreement. (Doc.

18   No. 25 at 21.)  Rather, Plaintiff points to evidence that Defendant terminated Plaintiff because

19   Defendant's law-firm client did not like the conflict between Plaintiff and Chavarria.  (Id. at

20   16.) Considering the evidence and argument presented by the parties, the Court concludes that

21   whether the termination was pretextual is an issue of fact for the jury to resolve.  Accordingly,

22   the Court denies Defendant's motion for summary judgment on Plaintiff's discrimination

23   claim.

24   **B.     Sexual-Orientation Harassment**

25          Plaintiff's second cause of action is for harassment based on sexual orientation in

26   violation of FEHA, Cal. Gov't Code § 12940(j). (Compl. ¶¶ 26-32.)  Plaintiff's claim is based

27   on allegations that Defendant's employees made derogatory comments and sent inappropriate

28   emails and text messages to Plaintiff from 2005 through July of 2007.  (Id. ¶ 11.)

1    Defendant argues that Plaintiff's claim for sexual-orientation harassment fails because
2    it is time-barred.  (Doc. No. 16-1 at 20-23.)  In order to assert a claim under FEHA, a plaintiff
3    must file an administrative charge with the DFEH within one year of the alleged unlawful act.
4    See Cal. Gov't Code § 12960(d).  The timely filing of this complaint is a "prerequisite to the
5    bringing of a civil action for damages under the FEHA."  Romano v. Rockwell Int'l, Inc., 14
6    Cal. 4th 479, 492 (1996).  Plaintiff filed his DFEH charge on June 24, 2008.  (Hernaez Decl.
7    Ex. M.)  Defendant therefore contends that Plaintiff cannot recover damages for harassment
8    based on conduct that occurred prior to June 24, 2007.  (Doc. No. 16-1 at 20.)  Moreover,
9    Defendant argues that Plaintiff has presented no evidence of harassment within the statutory
10   period.  (Id. at 20-23.)  Plaintiff contends that his claim was timely and that the continuing
11   violation doctrine allows him to recover for conduct that occurred outside of the statutory
12   period. (Doc. No. 25 at 22-23.)  Under California law, a continuing violation exists and allows
13   a plaintiff to recover for actions that occurred outside the limitations period where the
14   employer's unlawful actions are: (1) similar in kind; (2) have occurred with reasonable
15   frequency; and (3) have not acquired a degree of permanence.  See Richards v. CH2M Hill,
16   Inc., 26 Cal. 4th 798, 823 (2001).  Considering the evidence presented by Plaintiff, the Court
17   concludes that Plaintiff's harassment claim is not time-barred because Plaintiff has presented
18   evidence that he was subject to harassment after June 24, 2007.  Specifically, in his
19   declaration, Plaintiff states that "Chavarria repeatedly called me a 'fag' and 'queer' through
20   the end of my employment in July 2007" and that "[i]n 2006 and 2007, Chavarria's use of the
21   terms 'fag' and 'queer' towards me increased and continued into July 2007."  (Botros Decl.
22   ¶ 4.)

23   Defendant also argues that Plaintiff's harassment claim fails because the alleged
24   harassment was neither severe nor pervasive.  (Doc. No. 16-1 at 24-26.)

25   To prevail on a hostile work environment claim under California's FEHA, an
26   employee must show that the harassing conduct was severe enough or
     sufficiently pervasive to alter the conditions of employment and create a work
27   environment that qualifies as hostile or abusive to employees because of their
28   sex [or sexual orientation].   There is no recovery for harassment that is

occasional, isolated, sporadic, or trivial.

Hughes v. Pair, 46 Cal. 4th 1035, 1043 (2009) (quotation marks and citations omitted). Additionally, the environment must be both objectively and subjectively offensive. Id. at 1044. In close cases, where the severity and frequency of the harassment is in question, it is more appropriate to leave the assessment to the fact-finder than for a court to decide the case on summary judgment. Davis v. Team Elec. Co., 520 F.3d 1080, 1096 (2008). Plaintiff contends that Chavarria sent Plaintiff harassing text messages and e-mails that were sexual in nature and related to Plaintiff's sexual orientation. (Botros Decl. ¶ 4.) Additionally, Plaintiff contends that Chavarria repeatedly called Plaintiff inappropriate names, and that the frequency of the name calling increased in 2006 and 2007. (Id.) The Court concludes that Plaintiff has presented sufficient evidence to show that a genuine issue of disputed fact remains regarding whether Chavarria's harassment was so severe or pervasive as to create a work environment that qualifies as hostile or abusive. See Hughes, 46 Cal. 4th at 1043; Davis, 502 F.3d at 1096. Accordingly, the Court denies Defendant's motion for summary judgment on this ground.

Defendant additionally argues that Plaintiff has failed to show that Defendant can be liable for harassment during the times when Plaintiff was not supervised by Chavarria and Navar. (Doc. No. 16-1 at 23-24.)

> FEHA imposes two standards of employer liability for sexual [orientation] harassment, depending on whether the person engaging in the harassment is the victim's supervisor or a nonsupervisory coemployee. The employer is liable for harassment by a nonsupervisory employee only if the employer (a) knew or should have known of the harassing conduct and (b) failed to take immediate and appropriate corrective action.

Hope v. Cal. Youth Auth., 134 Cal. App. 4th 577, 588 (2005). Employers are strictly liable for harassment by a supervisor. Id. at 588-89. Under this standard, Defendant may only be liable for Chavarria and Navar's conduct during the times they were not supervising Plaintiff if Defendant knew or should have known about the harassment and failed to take corrective action. See id. Accordingly, to the extent Plaintiff's claim is based on harassing conduct by nonsupervisory coemployees, Defendant may request an appropriate jury instruction that

Defendant is only liable on this theory if it knew or should have known of the harassment and failed to take corrective action or Defendant may bring an appropriate motion in limine to exclude evidence as unduly prejudicial under Federal Rule of Evidence 403.

Defendant finally argues that Plaintiff's harassment claim fails because Defendant is insulated from liability under the doctrine of avoidable consequences. (Doc. No. 16-1 at 27-29.) "Under the avoidable consequences doctrine as recognized in California, a person injured by another's wrongful conduct will not be compensated for damages that the injured person could have avoided by reasonable effort or expenditure." State Dept. of Health Services v. Superior Court, 31 Cal. 4th 1026, 1043 (2003). The doctrine applies to hostile environment harassment claims under FEHA. Id. at 1044. However, the

> defense affects damages, not liability. An employer that has exercised reasonable care nonetheless remains strictly liable for harm a sexually harassed employee could not have avoided through reasonable care. The avoidable consequences doctrine is part of the law of damages; thus, it affects only the remedy available. If the employer establishes that the employee, by taking reasonable steps to utilize employer-provided complaint procedures, could have caused the harassing conduct to cease, the employer will nonetheless remain liable for any compensable harm the employee suffered before the time at which the harassment would have ceased, and the employer avoids liability only for the harm the employee incurred thereafter.

Id. at 1045 (citations omitted); see Myers v. Trendwest Resorts, Inc., 148 Cal. App. 4th 1403, 1421 (2007). Thus, Defendant's arguments regarding the doctrine of avoidable consequences relates only to the amount of damages available to Plaintiff and not to Defendant's liability. Defendant has failed to show the absence of a genuine issue of material fact as to Plaintiff's ability to recover any damages. Accordingly, the Court concludes that summary judgment is improper on these grounds.

The Court concludes that Plaintiff's cause of action for sexual-orientation harassment is timely and that Plaintiff has shown that a genuine issue of disputed fact remains regarding whether the harassment by Plaintiff's supervisors was so severe or pervasive as to create a hostile work environment. See Hughes, 46 Cal. 4th at 1043; Davis, 502 F.3d at 1096.

1  Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's
2  harassment claim.  See Matsushita, 475 U.S. at 586-87.

3  **C.     Retaliation**

4       Plaintiff's fifth cause of action is for retaliation in violation of FEHA, Cal. Gov. Code
5  § 12940(h).  (Compl. ¶¶ 46-52.)  FEHA makes it unlawful for any employer "to discharge,
6  expel, or otherwise discriminate against any person because the person has opposed any
7  practices forbidden [by FEHA] . . . ."  Cal. Gov. Code § 12940(h).  FEHA retaliation claims
8  are evaluated under federal law interpreting Title VII cases.  Flait v. North American Watch
9  Corp., 3 Cal. App. 4th 467, 475-76 (1992).  Federal courts have applied the burden shifting
10 scheme articulated in McDonnell Douglas, 411 U.S. 792 to retaliation claims.  Stegall v.
11 Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).  Accordingly, once Plaintiff
12 establishes a prima facie case of retaliation, the burden shifts to Defendant to articulate a
13 legitimate, non-discriminatory reason for the adverse employment action.  Id. at 1066.  If
14 Defendant articulates such a reason, Plaintiff must demonstrate that the reason was merely a
15 pretext for a retaliatory motive.  Id.

16      Defendant does not dispute that Plaintiff has presented a prima facie case of retaliation.
17 (See Doc. No. 16-1 at 30.)  Rather, Defendant contends that Plaintiff's retaliation claim fails
18 because Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff.  (Id.)
19 Defendant argues that it terminated Plaintiff because Plaintiff threatened Chavarria and
20 because Plaintiff violated Defendant's non-disclosure agreement.  (Id.)  Plaintiff, however, has
21 presented evidence suggesting that Plaintiff was suspended and then terminated because
22 Defendant's client did not like the conflict between Plaintiff and Chavarria.  (Botros Decl. ¶¶
23 24, 25.)  Moreover, Plaintiff was terminated only days after complaining about Chavarria's
24 alleged harassment.  The Court concludes that Plaintiff has presented sufficient evidence to
25 show that a genuine issue of disputed fact remains regarding whether Defendant's purported
26 reason for terminating Plaintiff was merely a pretext for retaliation.  See Stegall, 350 F.3d at
27 1066.  Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's
28 retaliation claim.  See Matsushita, 475 U.S. at 586-87.

1    **D.      Harassment Prevention and Correction**

2         Plaintiff's third and fourth causes of action allege that Defendant failed to prevent and

3    correct harassment and discrimination.  (Compl. ¶¶ 33-45.)  Section 12940 requires employers

4    "to take all reasonable steps necessary" to prevent and correct discrimination and harassment

5    from occurring.  Cal. Gov't Code § 12940(j)(1), (k).  These provisions creates a statutory tort

6    action with the usual tort elements.  <u>Trujillo v. N. County Transit Dist.</u>, 63 Cal. App. 4th 280,

7    286 (1998).  Defendant contends that "it is undisputed that [Defendant] took significant efforts

8    to prevent harassment and discrimination from occurring in the workplace, by having policies

9    in place, promptly investigating Plaintiff's complaint, and taking appropriate action as revealed

10   by the fact that [Defendant] terminated Chavarria employment."  (Doc. No. 16-1 at 29.)

11   Plaintiff, however, contends that he refrained from reporting Chavarria's harassment because

12   he feared retaliation.  (Doc. No. 25 at 24 n.19.)  Further, Plaintiff contends that once he did

13   come forward with his complaints, his fears were confirmed and his employment was

14   terminated in retaliation for his complaint.  (<u>Id.</u>)  Considering the evidence presented by the

15   parties, the Court concludes that Plaintiff has presented sufficient evidence to show that a

16   genuine issue of disputed fact remains regarding whether Defendant took necessary steps to

17   prevent and correct discrimination.  <u>See</u> Gov't Code § 12940(j)(1), (k).  Accordingly, the Court

18   denies Defendant's motion for summary judgment on Plaintiff's third and fourth causes of

19   action.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 586-87.

20   **E.      Wrongful Termination**

21        Defendant argues that it is entitled to summary judgment on Plaintiff's cause of action

22   for wrongful termination in violation of public policy.  (Doc. No. 16-1 at 30-31.)  Specifically,

23   Defendant contends that all of Plaintiff's FEHA claims fail and, accordingly, that Plaintiff has

24   not identified an underlying violation to support his claim for wrongful termination.  (<u>Id.</u>)  The

25   Court, however, has concluded that Plaintiff has presented sufficient evidence to maintain a

26   cause of for retaliation under FEHA.  Accordingly, the Court denies Defendant's motion for

27   summary judgment on Plaintiff's sixth cause of action.

28   ///

1

**F.     Punitive Damages**

2          Defendant also moves for summary judgment on Plaintiff's requests for punitive

3   damages.  (Doc. No. 16-1 at 31-32.)  Under California Civil Code § 3294(b), a corporate

4   employer can only be assessed punitive damages for its employee's conduct when an officer,

5   director, or managing agent (1) authorized or ratified the conduct, (2) had advance knowledge

6   of the employee's unfitness and employed him with a conscious disregard of the rights or

7   safety of others, or (3) was personally guilty of oppression, fraud, or malice.  In this context,

8   a "managing agent" is limited to "only those corporate employees who exercise substantial

9   independent authority and judgment in their corporate decision-making so that their decisions

10  ultimately determine corporate policy."  White v. Ultramar, Inc., 21 Cal. 4th 563, 566-67

11  (1999).  Defendant contends that neither of Defendant's employees involved in the termination

12  decision, Pineda and Wetstein, were managing agents, and accordingly that Plaintiff cannot

13  recover punitive damages.  (Doc. No. 16-1 at 32; Pineda Decl. ¶ 16.)  In opposition to

14  Defendant's motion for summary judgment, Plaintiff points to portions of Pineda's testimony

15  indicating that Wetstein is the senior human resources director for Defendant's western and

16  central regions and that Wetstein has final authority regarding important human-resources

17  decisions.  (Doc. No. 25 at 25.)  Defendant disputes this.  Plaintiff has not yet had a chance to

18  depose Wetstein, and the discovery cutoff is not until June 12, 2010.  Considering the evidence

19  and argument presented by the parties thus far, the Court concludes that there is a material

20  issue of fact regarding whether Wetstein is a managing agent.  Accordingly, summary

21  judgment is not appropriate at this time.

22          Plaintiff and Defendant submitted evidentiary objections in connection with their

23  briefing on Defendant's motion for summary judgment.  (Doc. Nos. 25-1 & 27-3.)  The Court

24  notes the parties' objections.  To the extent they are valid, the Court sustains them.  To the

25  extent they are invalid, the Court overrules them.

26  ///

27  ///

28  ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court denies Defendant's motion for summary judgment.

**IT IS SO ORDERED**.

DATED: June 1, 2010

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:

All parties of record

- 15 -